HOWARD F. SILBER, ESQ. (State Bar #102888)
The Law Office of Howard F. Silber
2625 Townsgate Rd. Suite 330
Westlake Village, CA 91361
Phone:      (818) 706-8510
Facsimile:   (818) 706-8516

Attorney for Plaintiff, CODY HODGSON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CODY HODGSON | CASE NO. |
| Plaintiff, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| vs. | |
| PETERSEN INTERNATIONAL UNDERWRITERS, an Underwriter and Coverholder at Lloyds of London; and CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON subscribing to Policy No: 1368298 | |
| Defendants. | |
| _____ | |

This Complaint and Demand for Jury Trial arises from the denial and handling of a claim of insurance benefits under an occupation specific Total

Permanent Disability Policy issued by PETERSEN INTERNATIONAL UNDERWRITERS of Valencia, California on behalf of CERTAIN UNDERWRITERS at LLOYDS OF LONDON.

## **NATURE OF THIS ACTION**

1.  Cody Hodgson is a former professional hockey player in the National Hockey League (NHL). As a superior junior hockey player, he was drafted by the Vancouver Canucks in the first round of the 2008 NHL Draft. Cody played for the Vancouver Canucks, Buffalo Sabres, and Nashville Predators during his NHL career which spanned from 2008-2015.

2.  Commencing in his first season (2008) and every hockey season thereafter CODY HODGSON applied for, was accepted, and purchased policies of total permanent disability insurance through defendants PETERSEN INTERNATIONAL UNDERWRITERS with CERTAIN UNDERWRITERS at LLOYDS OF LONDON. Coverage for the 2008 and 2009 seasons was in the amount of $1,000,000.00. The premium paid for these two seasons was in the amount of $11,220.00. [1]

3.  The following hockey season, 2010-2011 coverage was again purchased with the defendants for $1,000,000.00 and the premium paid was $5,355.00.

4.  The following season, 2011-2012, Cody Hodgson again applied to Defendant PETERSEN INTERNATIONAL UNDERWRITERS for "off ice"

---

[1] [1] Professional hockey seasons commence each year on or about October 1st. Seasons end anywhere from April to June of the following year as determined by the length of the playoffs that a particular team plays in. The initial two year policy went into effect 8-25-2008 and expired on October 1, 2010. The policy in question Exhibit "A" in line with the hockey seasons covered commend by its terms on October 1, 2013 and was in effect for three years up and until September 30, 2016.

COMPLAINT AND DEMAND FOR JURY TRIAL

Permanent Disability Insurance with LLOYDS OF LONDON in the sum of $1,000,000, premiums paid were in the amount of $4,700.00.

5.  For the following season, 2012-2013, application again was made through defendant PETERSEN INTERNATIONAL UNDERWRITERS for permanent disability insurance for $1,000,000 with LLOYDS OF LONDON, premiums were paid in full in the amount of $4,810.00.

6.  Having now become a young star in the NHL, Plaintiff applied for and purchased three (3) years of Permanent Total Disability Insurance through Defendants PETERSEN INTERNATIONAL UNDERWRITERS with LLOYDS of LONDON at the start of the 2013 NHL Season. The policy benefits for the first two years (October 1, 2013- September 31, 2015) has a benefit of $10,000,000. In the final policy year (October 1, 2015-September 31, 2016) the benefit payable was reduced to $7,500,000. A copy of the insurance policy issued by Defendant PETERSEN INTERNATIONAL UNDERWRITERS with Defendant LLOYDS OF LONDON in the sum of $10,000,000 bearing Policy and Certificate Number 1368298 is attached hereto as Exhibit "A". The premium for the three NHL seasons was $40,135.50 in total, and was paid in full on October 27, 2013. This policy bearing Certificate Number 1368298 is the subject of this litigation.

7.  Plaintiff CODY HODGSON purchased all of the above described disability policies covering eight years and paid all of the premiums in the total

COMPLAINT AND DEMAND FOR JURY TRIAL

amount of $86,930.50 to insure his career, and that if he was ever rendered permanently disabled by an off-ice injury, disease, or illness during the policy periods he could recover for the premature end of his professional hockey career.

8.  During the 2015-16 hockey season during the coverage period of the policy attached as Exhibit "A", and barely a week after Plaintiff's twenty sixth (26th) birthday, and on February 28, 2016 the effects of a rare and potentially fatal blood disease entitled Malignant Hyperthermia (MH) first manifested itself in CODY HODGSON. Immediately thereafter Plaintiff underwent certain medical procedures which resulted in this diagnosis ending Plaintiff's career as a professional hockey player.

9.  Having been declared Totally Disabled by his treating physician Plaintiff made a claim for benefits under the policy. The policy has a "waiting period" of twelve months during which Cody Hodgson complied with all the terms of said policy and conditions precedent. After the expiration of the waiting period by letter dated April 3, 2017, defendants denied Plaintiff's claim. On the basis that the denial amounts to a breach of the Disability Policy, was made in bad faith, and done maliciously and/or with gross negligence, Plaintiff has filed this complaint, seeking herein actual, compensatory and punitive damages from defendants.

10. The Declarations page of the policy at page 2 specifically provides as

COMPLAINT AND DEMAND FOR JURY TRIAL

follows:

> **"In witness whereof** this policy has been signed in **VALENCIA, CA USA**, as authorized by the Underwriters, by **PETERSEN INTERNATIONAL UNDERWRITERS"**.

thereby invoking personal jurisdiction over all defendants in this case in this court.

## THE PARTIES

11. Plaintiff CODY HODGSON is an individual who presently resides in Nashville, Tennessee. At the time, Plaintiff applied for the policy of disability insurance (Exhibit "A" policy Number 1368298 referenced above) through PETERSEN INTERNATIONAL UNDERWRITERS of Valencia, California he resided in Buffalo, New York. At all times, relevant herein CODY HODGSON was a resident of the United States and employed in the United States.

12. Defendant PETERSEN INTERNATIONAL UNDERWRITERS is a California corporation formed and existing under the laws of the State of California with its principal place of business at 23029 Valencia Blvd. Suite 215, Valencia, California, in the County of Los Angeles, State of California.

13. Upon information and belief Defendants CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON are an association of underwriters and/or individual insurance companies organized and existing under the laws of a foreign sovereign (the United Kingdom) that sold or subscribed to the Disability Policy. Upon

information and belief, the defendants are authorized to transact, and are transacting business in the State of California and the County of Los Angeles, through their respective agents including PETERSEN INTERNATIONAL UNDERWRITERS.

## JURISDICTION AND VENUE

14.This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  Complete diversity of citizenship exists between the parties, and the amount on controversy, is in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, attorney fees, and costs.

15. In as much as defendant PETERSEN INTERNATIONAL UNDERWRITERS is a California Corporation with its principal place of business at 23029 Valencia Blvd. Suite 215, Valencia, California, in the County of Los Angeles, State of California. This Court has personal jurisdiction over the Defendants PETERSEN INTERNATIONAL UNDERWRITERS and CERTAIN UNDERWRITERS OF LLOYDS OF LONDON Additionally, Defendants and each of them conduct business activities within the territorial confines of this judicial district and division.

16. As stated above the subject Disability Policy also contains a clause in which the Defendants declare that they contractually entered into the agreement in Valencia, California, and therefore agreed to submit to the jurisdiction of any court of competent jurisdiction within this State.

17. Venue is proper in this judicial district and division pursuant to 28 U.S. C. § § 1391 (a) and (b) because of substantial part of the events and omissions giving rise to this claim occurred in the district, and the contract entered to in this district.

## **GENERAL ALLEGATIONS**

18. Throughout his childhood and teenage years Plaintiff CODY HODGSON established himself as a young hockey star and draft prospect entering the 2008 NHL Draft. As a superior junior hockey player Cody was drafted by the Vancouver Canucks in the first round of the 2008 NHL Draft as the tenth overall pick.  Having shown to be a star in junior hockey Plaintiff was called up and playing in the NHL by age 20. In the 2011-12 season, he was a leading candidate for the NHL Rookie of the Year.

19. As a rising star in both junior hockey and then the NHL, Plaintiff decided it prudent to insure himself against an off-ice injury or illness and first submitted an application to PETERSEN INTERNATIONAL UNDERWRITERS for Permanent Disability Insurance commencing in 2008.

20. In conjunction with the Application Plaintiff also executed the defendant's preprinted "Authorization to Release Personal Health Information Form". In addition, Cody Hodgson also submitted PETERSEN INTERNATIONAL UNDERWRITERS Long Form Application and Medical

Exam. A true and correct copy of the Authorization to Release Personal Health Information is Attached hereto as Exhibit "B".  A true and correct copy of said Long Form and Medical Exam is attached hereto as Exhibit "C".

21.After the expiration of the initial two-year policy and prior to the 2010 season Cody Hodgson once again completed the defendants preprinted forms, paid the premium of $5,355.00 and again insured himself against off ice illness or injury for the 2010 season in the sum of $1,000,000. A true and correct copy of the Professional Athletes Application and Medical Form and the policy are attached hereto as Exhibit "D".

22. As with the previous three years, and prior to the start of each and every hockey season from 2011 through 2015 Plaintiff filled out defendants pre- printed Application Forms, including an Authorization to Obtain Medical and other Records, and made Application for and paid premiums for Permanent Disability Insurance with defendants, including in September 2013 when Plaintiff purchased the three year policy covering the 2013, 2014, and 2015 NHL Seasons, bearing Certificate No: 1368298. A true and correct copy of said Renewal Form and Authorization dated September 12, 2013 is attached hereto as exhibit "E". Plaintiff was then accepted, paid for and insured himself under the policy bearing Certificate No: 1368298.

23. As part of his participation in the National Hockey League for each and every of the six seasons he played in the NHL (2010- 2015 seasons) Plaintiff was subject to a Pre-Participation Medical Evaluation (PPME) which

also included the preparation of a detailed PPME Report.  In each report amongst other things CODY HODGSON listed his injuries and family history of illnesses. These PPME Reports were made available to defendants each year by way of the signed Authorization referenced above. A true and correct copy of the PPME Report submitted by CODY HODGSON dated September 11, 2013 is attached hereto as Exhibit "F". By way of these reports, yearly applications, and authorizations defendants issued the policy of insurance bearing Certificate No. 1368298, subject to exclusions for back injuries and asthma.

24. After obtaining the policy of disability insurance for three years at the start of the 2013 season Plaintiff led the Buffalo Sabres in scoring with highs of 20 goals and 24 assists. Plaintiff also played in the world championships after the NHL season.

25. More than two years after the commencement of the final three year policy and on February 28, 2016, Plaintiff first fell ill in a hotel room in Milwaukee, Wisconsin suffering from rigidness, shortness of breath and high fever. He immediately presented himself to his team doctors, with these and other symptoms including brown urine.

26. The following day he flew with his team to Cleveland for a game but could not play. On March 2, 2016, he could not practice and flew to Toronto to see doctors and trainers that he had worked out with over his career. He was recommended to take a blood draw, which then evidenced elevated CK levels of over 2400 (normal being 200), and elevated levels of AST, ALT and monocytes.

COMPLAINT AND DEMAND FOR JURY TRIAL

By way of these results, other symptoms, and the episode in Milwaukee, doctors were able to first suspect the manifestation of Malignant Hyperthermia in Plaintiff.

27. Thereafter Plaintiff presented himself to world renowned doctors at the Malignant Hyperthermia Investigation Unit (MHIU) in Toronto, Canada. Dr. Sheila Riaza, M.D. performed various tests at that time including a genetic marker test and diagnosed Plaintiff to be MH susceptible. A confirmation of Plaintiff having MH would have to be determined after Plaintiff underwent a muscle biopsy and caffeine-halothane contraction test which was then scheduled with Dr. Riazi.

28. At that time, Dr. Riazi informed Plaintiff that she could not predict either a future episode of rhabdomyolysis nor importantly estimate a safe level of exercise anywhere near that necessary to play professional hockey that would be safe for him.

29. Shortly hereafter Plaintiff suffered a number of episodes of shortness of breath and was twice hospitalized in Nashville Tennessee.

30. On July 5, 2016 Cody was admitted to Toronto General Hospital. A muscle biopsy was carried out for the performance of a caffeine halothane contracture test for MH. The results of the test were positive for MH.

31. Plaintiff as part of the diagnosis was specifically given instructions by

Dr. Riazi which included the following: "MHS individuals: **Should avoid** very strenuous and prolonged physical exercise, particularly in a hot environment." As suspected Cody inability to play professional hockey was now confirmed.

32. Shortly thereafter and in April 2016 Plaintiff first notified the defendants of his illness and claim of total disablement as of March 1, 2016[2]. On April 28, 2016 defendants Third Party Administrator Disability Management Services Inc. (DMS) first contacted Cody and his representatives and requested of Cody that he complete and return a Claimant's Statement and Occupational Duties Form and an Authorization to Obtain Information Form. All three forms were provided to DMS on May 5, 2016 as well as an Attending Physician Statement Form. DMS confirmed receipt thereof on May 19, 2016.

33. On May 19, 2016 DMS on behalf of the defendants requested: Cody Hodgson's player contracts; team medical information; tax returns with schedules 1099's and W-2s; Cody's pay stubs; details about other insurance coverage; the NHL disability insurance policy; and the names and addresses of all treatment providers. Approximately thirty days thereafter all such documentation and information was produced to DMS.

34. Thereafter at the request of DMS certain Releases for specific medical institutions were executed and returned to DMS for their use. In addition, Continuing Disability Forms requested were completed and returned by Cody's physicians to DMS.

---

[2] The subject policy went into effect on October 1, 2013. The date of manifestation of February 27, 2016 and or disability of March 1, 2016, are more than two years from the effective date of the policy and beyond the two year contestability period for the insurer should it attempt to claim manifestation or a pre-existing injury or illness prior to the effective date of the policy.

COMPLAINT AND DEMAND FOR JURY TRIAL

35. On August 17, 2016 DMS requested a telephonic conference with Plaintiff CODY HODGSON and its' representative. Pursuant to the request and on August 29, 2016 Mr. Philip Verdi of DMS conducted an approximate one hour interview with Plaintiff.

36. On or about January 19, 2017 DMS also conducted a telephonic interview with Plaintiff's treating physician Dr. Sheila Riazi. It is Dr. Riazi who has diagnosed Cody as having MH; that the illness renders him permanently disabled from his occupation of playing professional hockey; and that the condition is permanent. In addition, Dr. Riazi has determined that the date of manifestation of the illness was the date of the initial non-anesthetic induced rhabdomyolysis episode on February 27, 2016.

37. The subject policy states in pertinent part:

"In the event that the **Insured** sustains **Sickness or Disease** which first **manifests** itself during the policy period and which solely and independently of any other cause results in the Total Disablement directly culminating in the Permanent Total Disablement of the Insured and providing the Total Disablement commenced within twelve (12) months of the date of such first **manifestation**, then the Insurers agree to pay the benefits stated in the Schedule of the Insured."

COMPLAINT AND DEMAND FOR JURY TRIAL

The Policy contains the following definition:

**Permanent Total Disablement** shall mean that the **Insured** has suffered continuous Total Disablement for the **Waiting Period** stated in the schedule, and that as a result of the Accidental **Bodily Injury or Sickness or Disease** giving rise to the **Total Disablement**, the **Insured** has no likely hope of improvement sufficient to **Participate** ever again in his occupation as stated in the schedule. The Policy has a 12 month Waiting Period.

38. Plaintiff reported his Claim that he had been totally disabled since March 1, 2016 as a result of the symptoms which first manifested themselves on February 27, 2016. Plaintiff per the Attending Physician Form has been totally disabled in his occupation ever since with no hope of recovery. The Waiting Period expired on February 27, 2017.

39. Pursuant to the terms of the Policy on March 1, 2017 Plaintiff submitted a Permanent Total Disability Form attesting to the fact that his Total Disability was in fact permanent and that he had no hope of recovery sufficient to allow him to be employed in his specific occupation.

40. After more than a year of investigation, Plaintiff has requested from Defendants their position on the claim on numerous occasions, after some delay defendants denied the claim on April 3, 2017 claiming a pre-existing illness and a ghost manifestation before the policy period.

COMPLAINT AND DEMAND FOR JURY TRIAL

41. The reasons explained in the denial letter have no basis in law or fact, and in the letter the insured was informed that his claim is now closed. Plaintiff has learned that other former professional athlete claimants have been handled in the same arbitrary and capricious manner by the defendants. In a number of sports disability claims defendants have even instituted litigation in foreign jurisdictions prior to the claimant being made aware that his claim was denied to gain an improper litigation advantage. CODY HODGSON did not purchase the subject policy to have his claim wrongfully denied or to be sued by his insurer for submitting a valid claim. Defendants custom and practice forces plaintiff to file this action at this time or be at a severe disadvantage.

## FIRST CAUSE OF ACTION
### (Breach of Contract against All Defendants)

42. Plaintiff realleges and incorporates by references herein each allegation contained in paragraphs 1 through 41, above.

43. Plaintiff and Defendants entered into a binding and enforceable contract, the Disability Policy.  Plaintiff fully performed all or substantially all of the things required of him under the Disability Policy, or was excused from his performance. All conditions required for Defendant's performance under the Disability Policy

have occurred.  Defendants have breached the Disability Policy by, among other things:

    a. Wrongfully withholding the payment on Plaintiff's claim for benefits thereunder and for wrongfully denying his claim;

    b. Failing to promptly and fully investigate the claim;

    c. Purporting to impose upon Plaintiff conditions not required by the Disability Policy; and

    d. Failing to fulfill their obligation not to impair the rights of Plaintiff, as insured.

44. As a direct and proximate result of the Defendants' acts, Plaintiff has been damaged in an amount in excess of the Court's jurisdictional limits.  These damages include the benefits due under the Disability Policy, compensatory damages, general damages, special damages, benefit of the bargain damages, interest, costs and attorney's fees, all of which Plaintiff seeks to recover.

## SECOND CAUSE OF ACTION

### (Tortious Breach of Duty of Good Faith and Fair Dealing against All Defendants)

45. Plaintiff realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 44, above.

46. Implied in the Disability Policy is a covenant that the Defendants would act in good faith and deal fairly with Plaintiff, would do nothing to interfere with

the rights of Plaintiff to receive the benefits due under the Disability Policy, and would give at least the same level of consideration to Plaintiff's interests as the Defendants gave their own.

47. In the course of failing to inform plaintiff as to their position on coverage and failing/refusing to pay the benefit to Plaintiff under the Disability Policy, and/or in denying this valid claim, the Defendants breached the implied covenant of good faith and fair dealing by, among other things:

    a. Wrongfully delaying claims for benefits thereunder and/or failing to advise the insured on the status of his claim.

    b. Failing to promptly and fully investigate the claim;

    c. Purporting to impose upon Plaintiff conditions not required by the Disability Policy;

    d. Failing to fulfill their obligation not to impair the rights of Plaintiff, as the insured;

    e. Ignoring California law and insurance industry standards; and

    f. Giving greater consideration to their own interests than Plaintiff's interests.

48. The Defendants did the things and committed the acts alleged above for the purpose of consciously withholding from Plaintiff the rights and benefits to which Plaintiff was entitled under the Disability Policy, and without considering the interests of Plaintiff to at least the same extent as the Defendants considered

their own interests.  The Defendants' acts were inconsistent with the reasonable expectations of their insured, contrary to established claims practices and legal requirements, and constitute bad faith.

49. As a direct and proximate result of the Defendants' acts, Plaintiff has been damaged in an amount in excess of the Court's jurisdictional limits.  These damages include the benefits due under the Disability Policy, compensatory damages, punitive damages, costs and attorney's fees, all of which Plaintiff seeks to recover.

50. Pursuant to the holding *Brandt v. Superior Court,* 37 Cal. 3d 813 (1985), Plaintiff is entitled to recover all attorney's fees and costs that he has reasonably incurred, and is incurring, in his efforts to obtain the policy benefits that the Defendants wrongfully withheld, and are withholding, in bad faith, plus interest, in an amount to be proven at trial.

51. The Defendants' conduct was despicable and was done with a conscious disregard of Plaintiff's rights, constituting oppression, fraud, and/or malice, in that the Defendants engaged in a series of acts designed to delay and deny the benefits to under the Disability Policy.  The Defendants ignored Plaintiff's interests and concerns, with the requisite intent to injure within the meaning of California Civil Code section 3294.  Therefore, Plaintiff is entitled to recover punitive damages

COMPLAINT AND DEMAND FOR JURY TRIAL

from the Defendants in an amount sufficient to punish and to make an example of the Defendants and in order to deter similar conduct.

## THIRD CAUSE OF ACTION

### (Bad Faith Denial of Insurance Benefits)

52.  Plaintiff realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 51, above.

53.  Plaintiff and Defendants CERTAIN UNDERWRITERS AT LLOYDS OF LONDON entered into a binding enforceable contract and policy of insurance, the Disability Policy.  Plaintiff timely made a claim and benefits are due under the Disability Policy.  As set forth more fully herein, Defendants' withholding of benefits was unreasonable, malicious, oppressive and fraudulent.  Plaintiff was damaged by Defendants withholding of benefits.  Plaintiff seeks damages, including punitive damages, resulting from Defendants unreasonable, malicious, oppressive and fraudulent withholding of benefits under the Disability Policy.

## CONDITIONS PRECEDENT

54. All conditions precedent have been performed or have occurred as required.

## PRAYER FOR RELIEF

55. WHEREFORE, Plaintiff CODY HODGSON respectfully prays for judgment entered against Defendants, as follows:

COMPLAINT AND DEMAND FOR JURY TRIAL

**ON THE FIRST CAUSE OF ACTION**

   1.  For damages, plus interest according to proof at the time of trial;

**ON THE SECOND AND THIRD CAUSE OF ACTION**

   2.  For damages, including reasonable attorney's fees and expenses incurred in obtaining the benefits due under the Disability Policy, plus interest, according to proof at the time of trial.

   3. For punitive damages in an amount to be determined at the time of trial.

**ON ALL CAUSES OF ACTION**

   4.  That judgement be entered in favor of Hodgson and against Defendants;

   5.  For costs of suit incurred herein including reasonable attorney's fees; and

   6.  For such other, further, and/or different relief as may be just and proper.

DATED:  April 3, 2017        LAW OFFICES OF HOWARD F. SILBER

                    By:    /s/  Howard F. Silber
                          HOWARD F. SILBER, ESQ.
                          LAW OFFICES OF HOWARD SILBER
                          2625 TOWNSGATE ROAD SUITE 330
                          WESTLAKE VILLAGE, CA 91361
                          818-706-8510
                          howard@hfsilberlaw.com

COMPLAINT AND DEMAND FOR JURY TRIAL

## **DEMAND FOR JURY TRIAL**

Plaintiff Cody Hodgson is entitled to and hereby requests a jury trial on all issues addressed in the foregoing complaint.

This the 3rd day of April, 2017.

/s/ Howard F. Silber

_____

HOWARD F. SILBER, ESQ.

COMPLAINT AND DEMAND FOR JURY TRIAL